United States District Court
Southern District of Texas

**ENTERED**

April 04, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHRISTOPHER WILEY,                    §
                                       §
            Petitioner,                §
                                       §
V.                                     §    CIVIL ACTION NO. H-17-2023
                                       §
LORIE DAVIS, DIRECTOR, TEXAS          §
DEPARTMENT OF CRIMINAL                 §
JUSTICE, CORRECTIONAL                  §
INSTITUTIONS  DIVISION,                §
                                       §
            Respondent.                §

## AMENDED[1] MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Pending in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 10), in which Respondent argues that Petitioner's Federal Application for Writ of Habeas Corpus is time-barred.  Petitioner has not, as of this date, filed a response to the Motion for Summary Judgment.

Having considered Respondent's motion, the absence of a response, the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 10) be GRANTED and that Petitioner's § 2254 Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE, as time-barred.

---

[1] The Memorandum and Recommendation filed on January 25, 2018, is being amended to more fully discuss and consider whether the limitations period can or should be extended/excused.

## I.     Introduction and Procedural History

Christopher Wiley ("Wiley") is currently incarcerated in the Texas Department of Criminal

Justice, Correctional Institutions Division ("TDCJ-CID"), as a result of a 2010 capital murder

conviction in the 248th District Court  of Harris County, Texas, Cause No. 1177903, for which he

was sentenced to life imprisonment.  Wiley was found guilty by a jury of the murder offense on

October 5, 2010, and he was sentenced by the trial court to life imprisonment.  Texas' First Court

of Appeals affirmed the conviction on June 16, 2011, and the Texas Court of Criminal Appeals

refused his petition for discretionary review on October 5, 2011.  Wiley did not file a petition for writ

of certiorari with the United States Supreme Court and, as a consequence, his conviction became

final on or about January 3, 2012, when the time expired for him to file a petition for writ of

certiorari.

Wiley filed three state applications for writ of habeas corpus challenging the 2010 murder

conviction, the first on April 3, 2014, the second on February 4, 2015, and the third on March 17,

2015.  The first two applications were dismissed on procedural grounds on June 25, 2014, and

February 11, 2015, respectively.  The third application was denied on March 16, 2016, on the

findings of the state trial court without a hearing.  This § 2254 proceeding, filed by Wiley on or about

July 22, 2017, the date he signed it, followed.[2]

---

[2] Because the "mailbox rule" applies to prisoner filings in this Court and in the Texas courts, *Houston v. Lack*, 487 U.S. 266 (1988); *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013), it is the dates Wiley signed and dated his filings that are considered the dates he "filed" his state applications for writ of habeas corpus and his § 2254 application.  Wiley did not date any of his state applications for writ of habeas corpus, but did date his § 2254 application.  As such, for purposes of the mailbox rule, Wiley's § 2254 application will be considered to have been filed on the date he signed it.

## II.  Claims

Wiley raises four ineffective assistance of counsel claims in his § 2254 application, alleging that:

1.  his trial counsel was ineffective for failing to object to Dr. Black's determination that he was competent to stand trial;

2.  his trial counsel was ineffective for failing to raise an insanity defense;

3.  his trial counsel was ineffective for failing to offer exculpatory affidavit evidence at trial; and

4.  his trial counsel was ineffective for failing to provide him with a copy of the transcript from his co-defendant's trial.

Respondent argues in the Motion for Summary Judgment that this § 2254 proceeding, and all the claims Wiley raises herein, are time-barred under 28 U.S.C. § 2244(d).  While Wiley did assert in his § 2254 application that he "has a long history of learning disabilities such as [] not being able to read or write," that he has "attended special education courses since he was a child," and that his "slow learning disability is why it took over a year to file his 2254 habeas corpus writ" (Document No. 1 at 13), he has not filed a response to Respondent's Motion for Summary Judgment.

Wiley did not file a response to Respondent's Motion for Summary Judgment, but did file a response to the Memorandum and Recommendation filed in this case on January 25, 2018.  In two filings (Document Nos. 19 & 20), Wiley maintains that his IQ is very low (a 69 or 70), and that there is insufficient evidence that he committed the offense.  As set forth below, the insufficient evidence claim was addressed by the Texas courts in Wiley's direct appeal.  As for Wiley's assertion that his IQ is 69 or 70, he has submitted no evidence to support that assertion, and the "IQ: 000" reference on a disciplinary hearing form (Document No. 19 at 2) does not constitute evidence of Wiley's IQ.

III.   **Discussion – Limitations**

28 U.S.C. § 2244(d) provides for a one year limitation period as follows:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court.  The limitation period shall run from the latest of –

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, the record shows that Wiley was found guilty by a jury and sentenced by the state trial court to life imprisonment on October 5, 2010.  After his petition for discretionary review was refused by the Texas Court of Criminal Appeals on October 5, 2011, his conviction became final for purposes of § 2244(d)(1)(A)'s one year limitation period on or about January 3, 2012, when the time expired for him to file a petition for writ of certiorari with the United States Supreme Court. *Gonzalez v. Thaler*, 132 S.Ct. 641, 653-54 (2012) ([f]or petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the

4

judgment becomes final at the "expiration of the time for seeking such review"—when the time for

pursuing direct review in this Court, or in state court, expires."); *Flanagan v. Johnson*, 154 F.3d 196,

197 (5th Cir. 1998) (concluding that the petitioner's conviction, when he did not file a petition for

writ of certiorari to the Supreme Court, became final "ninety days after judgment was entered").[3]

Wiley then had until January 3, 2013, one year from the date his conviction became final, to file a

timely § 2254 application for writ of habeas corpus.   His § 2254 application, filed no earlier than

July 22, 2017, was filed over four years too late.

As for the pendency of Wiley's three state applications for writ of habeas corpus prior to his

filing of this § 2254 proceeding, none operated to statutorily toll the limitations period under 28

U.S.C. § 2244(d)(2).  That is because Wiley's state applications for writ of habeas corpus were filed

in April 2014, February 2015, and March 2015 – all more than a year after his conviction was final.

*See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (state application for writ of habeas corpus

did not toll § 2244(d)'s limitation period where the state application for writ of habeas corpus "was

not filed until *after* the period of limitation had expired") (emphasis in original), *cert. denied*, 532

U.S. 963 (2001).

In addition, despite Wiley's allegations in his § 2254 application that his "slow learning

disability" affected the timely filing of this § 2254 proceeding, those allegations – standing alone –

are not the type that would support the application of equitable tolling. *See Turner v. Johnson*, 177

---

[3] None of the other, alternative dates provided for under § 2244(d)(1)(B)-(D) for the commencement of the limitations period applies in this case.  Wiley has not alleged that he was impeded from filing a timely § 2254 application by any State action, § 2244(d)(1)(B), has not alleged any claims based on a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," § 2244(d)(1)(C), and has not alleged that any of his claims is based on a factual predicate that could not "have been discovered through the exercise of due diligence" by the date his conviction was final, § 2244(d)(1)(D).

F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999) (a petitioner's unfamiliarity with legal process, lack of representation, or illiteracy are not circumstances that warrant equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001) (time spent by a petitioner in psychiatric confinement on medication and without his glasses did not warrant equitable tolling); *see also Jones v. Stephens*, 541 F. App'x 499, 505 (5th Cir. 2013) ("Although mental illness may warrant equitable tolling, a petitioner (i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petition").   While in rare and exceptional circumstances equitable tolling may be available to "preserve a [party's] claims when strict application of the statute of limitations would be inequitable," *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir.1995), equitable tolling is only available if the petitioner "has been pursuing his rights diligently."  *Holland v. Florida*, 130 S.Ct. 2549 (2010).

Here, the only "evidence" of incompetence to file a timely habeas petition in the record in this case, or in the record from Wiley's trial, post-trial, and state post-conviction proceedings, shows that Wiley was initially found not competent to stand trial in late 2008.  He was thereafter admitted to the North Texas State Hospital, where, over the course of four months, he was diagnosed with, and treated for, a psychotic disorder, a mood disorder, polysubstance dependence, a learning disorder, and an antisocial personality disorder. (Document No. 13-13 at 43-49).  In July 2009, he was determined by the state trial court to be competent to stand trial, which commenced in September 2010.  (Document No. 13-14 at 60).  Wiley was found guilty in October 2010 and sentenced to life imprisonment. As set forth above, Wiley's conviction was final for purposes of the commencement of the one year limitations period on or about January 3, 2012.  It must therefore be

determined, from that point forward, whether rare and extraordinary circumstances affected Wiley's ability to timely file a § 2254 application.  There is, quite simply, no evidence in the record to support a determination that there were any rare or exceptional circumstances from January 3, 2012, forward, that would support an application of equitable tolling.  TDCJ-ID treatment records from 2013 show that Wiley was generally compliant with his oral psychiatric medications and was being given intra-muscular injections every four weeks of Haldol (an anti-psychotic used to treat schizophrenia).  In a Mental Health Psychiatric Evaluation dated April 26, 2013, Wiley's diagnoses of schizoaffective disorder, low intellectual functioning, and hypertension were noted, and Wiley reported at that time that he was doing well, his mood was stable, he had no active auditory hallucinations and had not had any for the past four months, and he was not working but was "working on his legal work."  (Document No. 13-13 at 76-77).  That record evidence does not evidence either a  mental condition, or such an inherently low level of intellectual functioning that could be considered a rare and exceptional circumstance that affected Wiley's ability to file a timely § 2254 application. The contents of a recent, February 2018 disciplinary offense report (Document No. 19 at 2-3) also does not provide the type of evidence that would support the application of equitable tolling.  That disciplinary offense report has in the top right-hand corner: "IQ: 000," which Wiley seems to suggest is indicative that his IQ is zero.  Neither the disciplinary offense report itself, nor anything else in the record supports that conclusion.  While an IQ of zero is "theoretically" possible, such a score is statistically and mathematically improbable and the "IQ:000" reference on the disciplinary offense report is more likely a reflection that TDCJ-ID does not have an IQ score for Wiley.

In all, the record evidence shows that at least as of the date of the April 26, 2013, Mental Health Psychiatric Evaluation, Wiley could have pursued his state post-conviction remedies, or could have filed a § 2254 application, but instead, filed nothing until over a year later. On this record Wiley cannot be said to have acted with diligence, which is also required for an application of equitable tolling.[4] As argued by Respondent, and borne out in the record evidence, equitable tolling is not available to Wiley.

As for Wiley's submission of an affidavit of his co-defendant, Trenard Battle, in which Battle states that Wiley had no knowledge of the crime, did not take part in it, and was an innocent bystander, that affidavit cannot provide the gateway discussed in *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924 (2013) for the consideration of Wiley's time-barred claims. In *McQuiggin*, the Supreme Court held that actual innocence may provide a "gateway" for allowing consideration of otherwise time-barred claims. But, it is not the mere allegation of actual innocence that will open such a "gateway"; instead, a claimant seeking to avoid a limitations bar must present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Id.* at 401. In other words, an "actual innocence" exception to the limitations bar will only be found if the evidence presented by the habeas petitioner convinces the court that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* at 395.

Here, the contents of Battle's affidavit are not new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Battle states in his affidavit as follows:

> That on August 1, 2008, at or around 8:00 pm, I was the only one to commit the crime that I have been convicted of. I was the only person to have knowledge of the

---

[4] Wiley's first state application for writ of habeas corpus was filed in April 2014 – two years after his conviction was considered final for purposes of seeking relief under 28 U.S.C. § 2254.

> crime when it was committed.  No one else was a party to this crime, nor did anyone else take part in it.  It is also my personal knowledge that Christopher Wiley and Jacque Garrett, the alleged co-defendants, had no knowledge of this crime, nor did they take part in it.  They are innocent bystanders to the crime that I have been convicted of.

(Document No. 5 at 10; Document No. 13-13 at 51).  That affidavit was signed by Battle in 2010, months before Wiley's trial commenced. *See* Document No. 12-9 at 17 (filed stamped May 6, 2010). It was not admitted into evidence at trial because it was hearsay and Battle, upon being called as a witness by the defense, invoked his Fifth Amendment right against self-incrimination and refused to testify.  (Document No. 12-15 at 54-55).  That affidavit from Battle, which was not admitted into evidence and which was not admissible, cannot be used by Wiley to establish a claim of actual innocence.  That is because there is nothing "new" about it. *See McQuiggin*, 569 U.S. at 399 ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new* evidence.'") (emphasis added).  Furthermore, nothing in the affidavit calls into question the determination by the Texas Court of Appeals that there was sufficient evidence to support Wiley's conviction as a *party* to the murder.

In the sole issue raised on appeal, Wiley claimed that the evidence was "legally insufficient to support his conviction because there is no evidence that he [was] the actual person who shot the complainant or [was] criminally responsible for the conduct of the person who shot the complainant." *Wiley v. State*, No. 01-10-00886-CR at 8.  In rejecting that insufficient evidence claim, Texas' First Court of Appeals focused, as follows, on Wiley's culpability under the law of parties:

Under the law of parties, a person is "criminally responsible: as a party to an offense if the offense was committed "by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). Each party to an offense may be charged with commission of the offense. *Id.* § 7.01(b). A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). Under section 7.02(b), if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02(b). A person commits a criminal conspiracy if, with intent that a felony be committed, he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense. *Id.* § 15.02(a)(1). Thus, if the evidence is sufficient to support [Wiley's] conviction as a party under either section 7.02(a)(2) or 7.02(b), we must uphold the conviction. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

To establish guilt under the law of parties, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Ahrens v. State*, 43 S.W.3d 630, 633-34 (Tex. App.–Houston [1st Dist.] 2001, pet ref'd). In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom*, 920 S.W.2d at 302; *Ahrens*, 43 S.W.3d at 634. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Intent may also be inferred from circumstantial events, such as acts, words, and the conduct of the defendant. *Guevara*, 152 S.W.3d at 50; *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). We note that proof beyond a reasonable doubt that [Wiley] actually fired the fatal shots is not necessary to support a capital murder conviction when, as here, the jury was charged on the law of parties. *Rabbini v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

In support of his sufficiency challenge, [Wiley] asserts that it is clear he was not the actual shooter of the complainant. He argues that his "vicarious liability" under section 7.02(a)(2) "extends no further than that which he specifically intended to promote or assist – an aggravated robbery" because there is no evidence he ever

"solicited, encouraged, directed, aided, or attempted to aid [Battle] to commit the offense of capital murder during the course of the robbery." He further argues that under section 7.02(b), the evidence is insufficient to sustain his conviction because here is no evidence that he should have anticipated the murder of the complainant.

The evidence, when viewed in the light most favorable to the prosecution, supports [Wiley's] conviction under the conspiracy theory of the law of parties. The record shows that the men, while at Diaz's trailer, discussed their robbery of the complainant. Battle then went to his car and retrieved a shotgun. When back inside Diaz's trailer, Battle pumped the shotgun several times while the group continued discussing the robbery. After Battle stated, "We do this for a living," [Wiley] suggested that they wait until after dark to rob the complainant. [Wiley], as he admitted in his statement, then went with an armed Battle and another man to the complainant's trailer.[5] After they entered the trailer, [Wiley], as he admitted to Pittman, hit the complainant in the face during a struggle over the shotgun. [Wiley] heard Battle shoot the complainant, and he later admitted that he had blood on his clothing. After hearing the gunshots, [Wiley] took a jewelry box and several pieces of jewelry from inside the complainant's trailer. And he was seen running from the trailer carrying several items, some of which he later pawned. Thus, there is sufficient evidence to support the jury's implied finding that [Wiley] and the two other assailants agreed to and, in fact, acted in concert to rob the complainant.

There is also sufficient evidence to support the jury's implied finding that [Wiley] should have anticipated that someone could be killed as a result of carrying out the robbery. [Wiley] asserts that there is no evidence that he knew that Battle "had a propensity to shoot people during robberies." However, knowledge of a co-

---

[5] Texas' First Court of Appeals described Wiley's statement to police as follows:

In his video-recorded statement, [Wiley] explained that on August 2, 2008, he went to the trailer park with Battle, Jaquest Evans and Piggy. Battle had a "black pump gun" with him, and [Wiley] gave him a bag in which to put the shotgun. The group first went to the trailer of one of Piggy's friends, where they talked about robbing the complainant. Then, the group went to the complainant's trailer, and [Wiley], who knew that Battle had the shotgun with him, was present when Battle kicked in the front door. Once the men were inside the trailer, [Wiley] heard Battle shoot the complainant. [Wiley] took a jewelry box and jewelry from the bathroom, and he went through the wooden chest. After taking the jewelry, [Wiley] left with Piggy. [Wiley] noted that he had blood on his clothing, and he later threw his clothes away. [Wiley] also admitted to pawning a watch and ring that he had taken from the complainant's trailer.

*Wiley*, No. 01-10-00886-CR at 6 (Document No. 13-3 at 38).

conspirator's violent propensity is not an element of the offense, "so the lack of evidence of such knowledge is not dispositive of sufficiency." *See Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The State, under section 7.02(b), was only required to prove that the complainant's murder should have been anticipated as a result of carrying out the conspiracy to commit robbery. *See* TEX. PENAL CODE ANN. § 7.02(b); *Barnes v. State*, 56 S.W.3d 221, 229 (Tex. App.–Ft. Worth 2001, pet ref'd). Here, [Wiley] knew that Battle was armed with a shotgun. Robbery at gunpoint is sufficient, standing alone, to make the shooting an act that should have been anticipated, and, when an individual is shot, it must also be anticipated that the person may be injured or die as a result of the shots. *See Williams v. State*, 974 S.W.2d 324, 330 (Tex. App.–San Antonio 1998, pet, ref'd) (holding that killing during pawnshop robbery was foreseeable where at least one conspirator was present with firearm). Texas courts have consistently held that when a murder occurs in the course of a conspiracy to commit robbery, all parties to the robbery are guilty of murder. *See Green v. State*, 682 S.W.2d 274, 285-86 (Tex. Crim. App. 1984); *Longoria v. State*, 154 S.W.3d 747, 755 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd); *see also Ruis v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. 1979); *King v. State*, 502 S.W.2d 795, 797-98 (Tex. Crim, App. 1974). Courts have also consistently held that conspirators should anticipate that a murder could occur in the course of the commission of a robbery when they have knowledge that a co-conspirator is carrying a firearm. *See Love v. State*, 199 S.W.3d 447, 453 (Tex. App.–Houston [1st Dist.] 2006, pet ref'd); *Longoria*, 154 S.W.3d at 756-57. [Wiley] knew that Battle retrieved a shotgun when the men began discussing the robbery of the complainant, and he knew Battle brought the shotgun to the robbery. Moreover, [Wiley] admitted to Pittman that he struck the complainant in the head during a struggle over the shotgun.

Given this evidence, a reasonable trier of fact could have concluded that [Wiley] should have anticipated a murder as a possible result of his agreement to rob the complainant. Accordingly, we hold that the evidence is legally sufficient to support [Wiley's] conviction of the offense of capital murder.

*Wiley*, at 9-13.

Given the evidence recited by the Texas First Court of Appeals, and the fact that Wiley was charged and convicted as a *party* to the murder, the contents of Battle's affidavit do not make it "more likely than not that no reasonable juror would have convicted [Wiley]." The record shows that Wiley filed an pretrial affidavit attesting to his innocence. In that affidavit (Document No. 12-9 at 11-13), Wiley stated that he was innocently passing by the scene of the murder, entered the trailer,

12

saw the decedent's body and did nothing more than take property from the scene. That version of events was in vast contrast to the evidence at trial. Several witnesses testified that they heard Wiley discuss the robbery with Battle before it happened, saw Battle with a shotgun in Wiley's presence before the robbery, and saw Wiley, along with Battle, flee the scene of the robbery/murder within seconds of each other with Wiley carrying jewelry and/or knick-knacks (Devontae Hatchett (Document No. 12-13 at 96-99, 107-108, 138-141, 148); Evangelo Davis (Document No. 12-13 at 167-170, 192-194); Tony Anders (Document No. 12-13 at 221-23)   At least two witnesses also testified that Wiley did more than nod his head when the robbery plans were discussed and either commented himself, or repeated a comment made by Battle, that they do this "for a living" (Devontae Hatchett (Document No. 12-13 at 100-101); Kristin Davis (Document No. 12-14 at 33-34).  Upon this record, in which Wiley's conviction for capital murder was based on his being a *party* to the murder under Texas law,[6] the contents of Battle's affidavit do not provide an actual innocence gateway under *McQuiggin* to the consideration of Wiley's otherwise time-barred § 2254 application.

---

[6] There is no "new" evidence that Wiley was the innocent bystander he claimed to be. In the affidavit filed by his trial counsel in the state habeas proceeding, Danny Easterling stated, as follows, that Wiley had difficulty understanding that he could be found culpable even though he was not the shooter:

> Mr. Wiley had great difficulty understanding the legal concepts of the law of parties and conspiracy as he was not alleged to be the shooter in this case. He continually complained that he did not kill anybody but he did admit that he was involved and went into the home where the crime scene occurred with the co-defendant shooter. He also admitted to taking property during the murder.

(Document No. 13-14 at 21).

IV.    **Conclusion and Recommendation**

Based on the foregoing, and the conclusion that Petitioner Christopher Wiley's § 2254

Application for Writ of Habeas Corpus was not timely filed, that equitable tolling is not available,

and that an actual innocence gateway to the consideration of Wiley's untimely § 2254 application

has not been established with the affidavit of Trenard Battle or any other new evidence, the

Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 10) be

GRANTED and that Petitioner's Application for Writ of Habeas Corpus (Document No. 1) be

DENIED and DISMISSED WITH PREJUDICE as time-barred.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented

parties of record.  Within fourteen (14) days after being served with a copy, any party may file

written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order

80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from

attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d

89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.

1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day

period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United*

*Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written

objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ___ day of April, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE